ABIGAIL H. BOWERMAN

*v.*

M. SESSEL, EXR.

*Opinion filed October 24, 1901.*

1. WILLS—*whole will should be considered in determining meaning of particular clause.* The whole will and all of its parts should be construed together to determine the true meaning of a clause containing a particular bequest.

2. SAME—*language of a will construed.* Under a will giving the homestead and household goods to the testator's wife for life, and providing that the executor shall convert all property into an interest-bearing fund, the interest to be paid to the wife, and if it amounts to less than $50 a month resort to be had to the body of the fund, the homestead and household goods to be sold after the wife's death and the proceeds put at interest, and, after making specific bequests, leaving the balance of the estate to the wife, "to be distributed as she sees fit after her death," the wife takes the homestead and household goods for life, with the right of support from the fund, as provided in the will, and with the right to make testamentary disposition of any balance of the fund, including the proceeds of the sale of the homestead, remaining in the hands of the executor after he has paid the specific bequests.

APPEAL from the Circuit Court of Macoupin county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

H. R. BUDD, (D. E. KEEFE, of counsel,) for appellant.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant, formerly the wife of Peter J. Hendgen, deceased, (now the wife of one Bowerman,) has perfected this appeal from a decree of the circuit court of Macoupin county construing the will of her said deceased husband. The will is as follows:

"I, Peter J. Hendgen, of Bunker Hill, Macoupin county, State of Illinois, being of sound health and body and of disposing mind and memory, yet mindful of the uncertainties of life, do make and publish this my last will and testament.

"I bequeath to my wife, Abigail H. Hendgen, the homestead and all the household goods in it, without any exception, the above properties are situated in the town of Bunker Hill, Macoupin county, Ill., during her natural life. I am not in debt at present, and I am certain I will not get in debt. I want my administrator, after paying all my debts and expenses of administration, to put all my property, real, personal and mixed, on interest on first-class securities or real estate, and to pay to my wife, Abigail H. Hendgen, all interest coming on my estate, and should the interest amount to less than $50 per month then be taken from the capital, if necessary. And also should she be in need of any additional amount at any time, it is my desire that she shall have it, providing the administrator is satisfied she is in need of it. It is my will and desire that in no event shall any part of my estate fall in the hands of my wife's relations or my own. After my wife's death I want the homestead and household goods sold, and whatever belongs to her at the time of her death, sold without exception and whatever money received therefrom put on interest same as before mentioned. I bequeath to Phillipine Burmester, of St. Louis, Mo., daughter of John Louis Burmester, of St. Louis, Mo., one thousand ($1000) dollars, to be paid to her when she gets eighteen years of age, including the interest what may have accumulated after my wife's death. I also bequeath to John Louis Burmester one thousand ($1000) dollars, to be paid after my wife's death. I bequeath to the following institutions, as follows: German Protestants' Orphans' Home on Easton avenue, about ten miles from court house, St. Louis, one thousand ($1000) dollars; the House of the Friendless, (Old Ladies' Home,) 4431 S. Broadway, St. Louis, one thousand ($1000) dollars; the Methodist Orphans' Home, St. Louis, sit. on Maryland avenue, one thousand ($1000) dollars; the Evangelical Deaconess, 4117 West Belle place, five hundred ($500) dollars; the Good Samaritan Hospital, on Jefferson avenue,

five hundred ($500) dollars; the Methodist Deaconess Home and Hospital, 2719 Chestnut street, St. Louis, five hundred ($500) dollars; the Memorial Home, on Grand avenue, five hundred ($500) dollars; the Bethesda Old Ladies Home, 917 Russell avenue, five hundred ($500) dollars. All of the above institutions are located in the city of St. Louis, Mo. My life insurance I want to be paid to my wife, Abigail H. Hendgen; she can use the same as she sees fit. I bequeath all balance of my estate to my wife, Abigail H. Hendgen, to distribute as she sees fit after her death. I hereby appoint my friend, Marcus Sessel, of Bunker Hill, Macoupin county, Ill., and my wife, Abigail H. Hendgen, my executors of this will."

The decree construed the will as follows:

*First*—Abigail H. Bowerman (formerly Hendgen) takes the homestead described in said will during the term of her natural life, with power of disposition of the proceeds of the sale thereof after her death.

*Second*—That said Abigail H. Bowerman takes the life insurance in said will absolutely.

*Third*—That all the remainder of the estate of Peter J. Hendgen, deceased, is by said last will devised in trust to the executor, to be invested in and by the provisions of said will. All the interest and income derived therefrom is to be paid to the said Abigail H. Bowerman during her life, with power in her of disposition, by will or otherwise, of all of the property belonging to said estate except the bequests to the defendants herein and named in said will to take effect after her death; and if said interest or income amounts to less than $50 per month, the principal of said estate not included in the bequests must contribute first to make this sum, and second, if found necessary, the bequests must contribute.

*Fourth*—The payment of all bequests is postponed until after the death of the said defendant, Abigail H. Bowerman, after which they are to be paid.

The testator died without leaving him surviving either child, children or descendants of a child or children. The estate consisted of notes, bonds and other securities, amounting in value to about $20,000, and a house and lot, which was the homestead of the deceased, of the value of about $800 to $1000. The bequests to Phillipine Burmester, John Louis Burmester and the various charitable institutions aggregate $7500, and that all funds of the estate not necessary for the payment of such legacies should be paid to the widow of testator, the appellant.

The language of this bequest is as follows: "I bequeath all the balance of my estate to my wife, Abigail H. Hendgen, to distribute as she sees fit after her death." The argument deals with the bequest as standing by itself, and the insistence is, the gift to the appellant is absolute, and cannot be cut down or qualified by the concluding words, "to distribute as she sees fit after her death." The circuit court construed this bequest to invest the appellant, not with absolute title to the property to which it may apply, but with power to make disposition thereof by will or otherwise, to take effect after her death. This is the only view consistent with the general plan and purpose of the testator as disclosed by the whole will. The rule is, the whole will and all of its parts shall be construed together to determine the true meaning of the clause which contains this bequest to appellant. (2 Jarman on Wills,—5th Am. ed.— p. 494; 20 Am. & Eng. Ency. of Law, 959, note 1.) When all of the provisions of the will are considered together three principal purposes are disclosed: First, to provide a home for the wife and for her support and maintenance during her lifetime; second, to devote so much of the estate as should remain at the death of the wife to the payment of the legacies and bequests specified in the will; third, to empower the wife, during her lifetime, to direct, by will or other legal manner, for the disposition, after her death, of any balance of the assets of the estate

which might remain after the payment of such legacies and bequests. To accomplish the first of these purposes the testator declared by his will his wife should have the "homestead and household goods in it" during her natural life, and in addition should be entitled to receive from the executor at least $50 per month during her natural life, and also any additional amount which she might stand in need of,—her necessities in this respect to be determined by the executor. In order to provide a fund wherewith to enable the executor to make such provisions for and payments to the wife, the testator directed that all of his property, real, personal or mixed, should be converted into an interest or income-producing fund, and that the monthly allowance provided for the wife should be paid out of such income or out of the *corpus* of the fund should the income thereof prove insufficient, this fund to remain, during the lifetime of the wife, intact in the hands of the executor, except so far as applied under the provisions for the support, maintenance and comfort of the wife. The provision with relation to the sale of the property of the testator to produce this fund is broad enough, considered as standing by itself, to include the "homestead and household goods" in the property to become converted into an income-producing fund, but, as before remarked, this clause of the will must be considered and given effect in connection with all other provisions or clauses, one of which expressly bequeaths to the wife the use and enjoyment of the "homestead and household goods" during her natural life, and another of which directs that the sale of the homestead and household goods shall be made after the death of the wife. After the death of the wife the proceeds of the sale of the "homestead and household goods" would fall into the general fund remaining in the hands of the executor which arose from the sale of the other property of the testator. The fund so remaining in the hands of the executor at the death of the wife, swollen by the proceeds

of the sale of the homestead and household goods, the will directs shall be devoted, so far as necessary, to the payment of the legacies specified in the will, and the balance to be appropriated to such persons or purposes as the wife of the testator shall have lawfully directed, by her will or in any other lawful manner, to receive it.

What has been said not only answers the contention referred to, but also the other insistence that the proceeds of the sale of the homestead and household goods will create a new fund which will have its inception after the other general fund has been distributed, and which is not devised or bequeathed to any one nor is any provision made for its disposition by the executor.

Nor are counsel correct in the position the will does not contemplate that the executor will, in any state of events after the death of the wife, hold any funds in his hands for any period of time longer than that required to pay or distribute it to the legatees mentioned in the will. The bequest to Phillipine Burmester cannot be paid at the death of the wife unless said Phillipine has then arrived at the age of eighteen years. Until that period occurs the executor must retain that portion of the fund in his hands. It may not occur for some time after the death of the appellant.

The chancellor correctly refused to regard the provisions of the will under consideration as void, and gave the proper construction to the instrument.

The decree is affirmed.

*Decree affirmed.*